HOLLISTER B. THAYER *vs.* JAMES L. STARK. SAME *vs.* ALFRED PERKINS.

The making of a mortgage of personal property, in pursuance of a previous request by the mortgagee, and a delivery of it by the mortgagor to the town clerk for registry, followed by acts on the part of the mortgagee, assenting to and adopting the mortgage, are evidence from which a jury may infer a delivery of the mortgage, from the time when such adoption takes place, although the original mortgage is lost or destroyed in the town clerk's office after being recorded.

THESE were actions of trover, each for a horse, which were tried together, before *Wells*, C. J., in the court of common pleas, and verdicts rendered therein for the defendants in both cases. The questions of law which were raised, and to the decision of which exception was taken, were the same in both.

It appeared in evidence, that one Donalson was formerly the owner of a mare, which, in 1841, he mortgaged to Charles and Hollis Thompson. In 1843, certain transactions took place, by which, as the defendants contended, the mare by agreement with Donalson was taken possession of by the mortgagees, for foreclosure under the mortgage, or under an agreement that she should be taken and accounted for, at her value, or sold, and the proceeds of the sale applied to the payment of the debt, for which the mortgage was given. The plaintiff contended, that no possession for foreclosure was taken under any such agreement. Both parties introduced evidence in support of their respective positions on these points, which was left to the jury under instructions not material to be stated.

The horses in controversy were both foaled from this mare,

after the transaction alluded to supposed to amount to a taking of possession; and the defendants derived title to the same respectively, by a sale from the Thompsons, either directly or through intermediate sales.

In August, 1847, Donalson gave a note to the plaintiff, for $454.60, for an alleged balance due on settlement. The fact of indebtedness was controverted by the defendants, and evidence was introduced with reference thereto, and submitted to the jury under instructions which were not objected to. There was evidence also that at the time the note was given, Donalson promised to secure the same by a mortgage of personal property.

About the 17th of December, 1847, Donalson, who lived in Coleraine, procured an attorney there to make out a mortgage to the plaintiff of certain property including the horses, and took the mortgage, after it was made, sealed, and signed, and witnessed, to the office of the town clerk of Colerain, and caused it to be recorded. Whether the mortgage deed was ever delivered to the mortgagee, was the subject of controversy between the parties. The plaintiff introduced evidence, that it was delivered soon after it was recorded, and the defendants introduced evidence that no delivery ever took place. It was testified to, and not contradicted, that soon after the recording of the mortgage, the plaintiff took possession of a cow and other animals mentioned therein, and appropriated them to his own use. Previous to the commencement of these actions, the plaintiff took a copy of the recorded mortgage from the town clerk's office, and demanded the horses of the respective defendants, who severally refused to give them up.

On the trial, the plaintiff produced evidence of the loss of the original mortgage, and a copy from the town clerk's office was read to the jury.

On the subject of a delivery of the mortgage deed, the presiding judge instructed the jury, that if the mortgage, after being recorded, was lost, stolen, or destroyed, without any actual or constructive delivery of the same, no title to the property could pass to the plaintiff by virtue of the mortgage; and that neither the taking possession of a part of the property

specified in the mortgage, nor the obtaining of a copy of the mortgage from the town clerk's office, nor demanding the property in controversy of the defendants, claiming title to it as mortgagee, was equivalent to a delivery of the mortgage; nor would all the above acts be equivalent to a delivery.

The other points, which arose upon the trial, and which were the subjects of . exception, became immaterial.

*C. P. Huntington* and *W. Griswold,* for the plaintiff, to the point that there was sufficient evidence to warrant a jury to infer delivery, cited Matthews, Pres. Ev. 37; *Knox* v. *Jenks,* 7 ·Mass. 488; *Colman* v. *Anderson,* 10 Mass. 105; *Hatch* v. *Hatch,* 9 Mass. 307; *Hedge* v. *Drew,* 12 Pick. 141; *Harrison* v. *Phillips Academy,* 12 Mass. 456; *Church* v. *Gilman,* 15 Wend. 656; *Mills* v. *Gore,* 20 Pick. 28, 36; Com. Dig. Fait. A. 3; Stark. Ev. 477; *Bullock* v. *Williams,* 16 Pick. 33; *Forbes* v. *Parker,* 16 Pick. 462; *McKinney* v. *Rhoads,* 5 Watts, 343 , *Commonwealth* v. *Selden,* 5 Munf. 160; *Scrugham* v. *Wood,* 15 Wend. 545; *Mc Cutchen* v. *Mc Cutchen,* 9 Porter, 650; *Burt* v. *Cassety,* 12 Alab. 734; *Elsey* v. *Metcalf,* 1 Denio, 323; 4 Cruise, (Greenl. Ed.) 28; *Chapell* v. *Bull,* 17 Mass. 213; *Bayley* v. *Bryant,* 24 Pick. 198; *Dole* v. *Bodman,* 3 Met. 139; 4 Kent, 454, 455, and note.

*G. T. Davis* and *D. Aiken,* for the defendants, cited, on the point of delivery, *Bullock* v. *Williams,* 16 Pick. 33; *Jewett* v. *Preston,* 14 Shep. 400; *Maynard* v. *Maynard,* 10 Mass. 456; *Dole* v. *Bodman,* 3 Met. 139, 142; *Baird* v. *Williams,* 19 Pick. 381; *Samson* v. *Thornton,* 3 Met. 275, 281; *Travis* v. *Bishop,* 13 Met. 304.

DEWEY, J. Two distinct grounds of defence, as appears from the bill of exceptions, were set up in the present case. 1. It was said, that the defendants, by virtue of a mortgage made by Donalson in 1841, and the subsequent proceedings under that title, had acquired a perfect title to the property in controversy, as against any subsequent mortgagee of the same holding under Donalson ; so that if a mortgage had been duly made and delivered by Donalson to the plaintiff, in 1847, yet the same would be wholly ineffectual to defeat the older title under the mortgage to the Thompsons in 1841. 2. It

was further contended, that the plaintiff had no such mortgage as he pretended to have received in 1847 ; that the same was invalid by reason of its not having been duly delivered, and that for this reason he could not maintain his action.

Both grounds of defence were submitted to the jury, who returned a general verdict for the defendants. This necessarily opens the inquiry, as to the ruling of the presiding judge, upon both points of the defence, as we cannot know upon which ground the verdict was rendered. If either ruling was erroneous, the verdict must be set aside.

As to the mortgage to the plaintiff, we are of opinion, that the objections taken to the instruction of the presiding judge are well founded. It was quite correct to instruct the jury, as an abstract proposition, that unless there was an actual or constructive delivery of the mortgage, the plaintiff acquired no title under it. But we think, that proper effect was not given to the evidence, that the mortgage was made upon a previous request by the plaintiff. It is well settled, that under an agreement between the parties, that one shall make a deed to the other, and deliver the same to the register of deeds for registry, and for the benefit or use of the grantee, the making of such deed and leaving the same with the register, for such purposes, constitute a good delivery of the deed to the grantee, without any further act. Here, however, the evidence did not go so far as to constitute the register an agent to receive the deed for the plaintiff; as it is not stated, that it was a part of the previous agreement that Donalson should leave the mortgage for record with the town clerk. But it was shown, that at the time of giving the note, which was the subject of the mortgage, Donalson agreed with the plaintiff, to secure the same by a mortgage of personal property. This was evidence of a previous request, on the part of the plaintiff, and an assent to take such mortgage ; and although not sufficient alone to establish a delivery of the same, yet if followed by subsequent acts of the plaintiff, assenting to and adopting the mortgage, it was, with such subsequent assent thereto, quite sufficient evidence to show a delivery of the mortgage.

We think that the evidence offered upon the point of sub-

sequent assent, taken in connection with the previous request, ought to have been submitted to the jury, as competent evidence to satisfy them of the delivery of this mortgage, and that they might properly have found such delivery to have been made. The fact, that the original mortgage, after it was recorded, was lost or stolen from the office of the town clerk, or accidentally destroyed while there, and before coming actually to the hands of the plaintiff, would not of itself defeat its operation as a valid subsisting mortgage, if the mortgage was made in pursuance of a previous request of the plaintiff, and after thus being made and received, was assented to by him, by receiving a portion of the property mortgaged, and asking for a copy of the mortgage of the town clerk.

This mortgage would however only have effect, from the time of the adoption of the same by the plaintiff. When thus adopted by him, the mortgage then became valid, and although the original was lost, he might hold under the same as a valid mortgage. So far as the case is stated in the bill of exceptions, it does not appear that the defendants, acquired any new title to the property in controversy, between the date of this mortgage and the time in which those acts of assent occurred.

Whether the establishing of this mortgage will avail the plaintiff to any beneficial purpose, may depend upon the rights of the defendants under the mortgage to the Thompsons in 1841. That is prior in time, and may therefore defeat a subsequent mortgage, however well executed. The opinion of the court has reference solely to the question, whether the evidence was sufficient to warrant the jury, under proper instructions, to find the delivery of the mortgage to the plaintiff. *Exceptions sustained.*